(70 South. 313)

No. 20468.

INTERSTATE TRUST & BANKING CO. v. IRWIN.

(Nov. 2, 1915.    Rehearing Denied Nov. 29, 1915.)

*(Syllabus by the Court.)*

1. BANKS AND BANKING ☞54—IMPAIRMENT OF CAPITAL—GIFT.

When the directors of a bank, in response to a demand of the state bank examiner to make good an impairment of the capital stock, sign and discount their personal note and deposit the proceeds to the credit of the bank, the transaction is a donation or gift to the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 92–98, 105–107; Dec. Dig. ☞54.]

2. BILLS AND NOTES ☞92—CONSIDERATION—BANKS—IMPAIRMENT OF CAPITAL.

The interest which bank directors, as stockholders, have in saving the bank from failure, and their natural obligation to make good an impairment of its capital stock, are sufficient and valid considerations for a promissory note, signed and issued by them individually for that purpose.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 166–173, 175–205, 208–212; Dec. Dig. ☞92.]

3. BILLS AND NOTES ☞356 — HOLDER FOR VALUE—BANKS AND BANKING.

The doctrine that a bank that discounts a note and credits the proceeds to the account of the maker is not a holder for value unless the amount is absorbed by an antecedent debt, or until it is withdrawn, can have no application to a case where the proceeds of the discount were credited to the account of some one else with the consent of the maker of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 908; Dec. Dig. ☞356.]

4. BILLS AND NOTES ☞310—SALE OF NOTE—PAYMENT BY THIRD PERSON.

When one who is not the maker of a note tenders to the holder the amount due, expressing his intention and purpose to be to "take up the note and carry it," and requests that the note be not stamped "paid," and the holder thereupon accepts the money and delivers the note uncanceled, without expressing any objection to transferring it, the transaction is a sale of the note. It is of no consequence that the transferor did not know that the legal definition and effect of the transaction was that of a sale, so long as he understood the facts of the transaction.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 742, 743; Dec. Dig. ☞310.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the Interstate Trust & Banking Company against Leon Irwin. From judgment for plaintiff, defendant appeals. Affirmed.

Frank E. Rainold and William C. McLeod, both of New Orleans, for appellant. Carroll, Henderson & Carroll and Howe, Fenner, Spencer & Cocke, all of New Orleans, for appellee.

### Statement of the Case.

O'NIELL, J. The defendant has appealed from a judgment rendered against him for $4,285.68, the balance due on a promissory note for $30,000, signed by him and 13 others in solido.

The signers of the note were directors of the People's Bank & Trust Company; and they signed and issued the note to save the institution from failure, under the circumstances recited hereafter.

In the early part of April, 1910, the state bank examiner found that the capital stock of the bank was impaired to an extent exceeding 20 per cent., and notified the officers and directors that he would close the institution unless the impairment was made good within two months, according to the provisions of section 17 of Act No. 179 of 1902.

The board met to consider the demand of the bank examiner; and, at the request of the directors of the People's Bank & Trust Company, Mr. Lynn H. Dinkins, president of the Interstate Trust & Banking Company, attended the meeting and was consulted as to the best method of making good the impairment of the capital stock of the People's Bank & Trust Company and of averting a failure of the bank. Mr. Dinkins expressed the opinion that, if the directors of the People's Bank & Trust Company would make good the impairment of its capital stock, the institution could overcome its difficulties and prosper. The fear was then expressed,

however, that, as a result of the condition found by the bank examiner, there would be a decline in the stock of the People's Bank & Trust Company on the Stock Exchange, which might cause a run on the bank. On behalf of the Interstate Trust & Banking Company, Mr. Dinkins undertook to avert the disaster, by upholding the People's Bank & Trust Company's stock on the Exchange.

At a meeting of the directors of the People's Bank & Trust Company, on the 25th of April, 1910, the members of the board submitted to Mr. Dinkins the following written proposition, addressed to the Interstate Trust & Banking Company, viz.:

"We, the undersigned, request you to protect stock in the People's Bank & Trust Company by purchasing as many shares thereof as may be necessary, not to exceed one thousand shares, at a price not above par, and, in consideration thereof, we obligate ourselves to pay you a commission of 2½ per share, par value, and to pay interest on your investment at the rate of 6% per annum; said commission and interest to be prorated in proportion to the number of shares to be pledged as hereafter provided; and, in order to indemnify you against any loss on account of said purchase, we severally obligate ourselves to pledge to you the number of shares in said company set opposite our several names, or a proportionate number thereof necessary to make the number of shares pledged equal fifty per cent. of the number of shares purchased by your company, said stock so pledged to be delivered indorsed in blank at the request of the Interstate Trust & Banking Company."

The above proposition was signed by the individuals composing the board of directors of the People's Bank & Trust Company, with the number of shares of stock of each signer placed after his name; and it was accepted in writing by Mr. Dinkins as president of the Interstate Trust & Banking Company.

In contemplation of the aid to be given by the Interstate Trust & Banking Company to the People's Bank & Trust Company, and perhaps to keep the former institution informed of the affairs of the latter, Capt. John Dibert, vice president of the Interstate Trust & Banking Company, and Mr. James D. Lacey, one of its directors, were elected members of the board of directors of the People's Bank & Trust Company, and Mr. Charles E. Novel, who had been cashier of the former institution, was installed as cashier of the latter.

In compliance with its agreement, the Interstate Trust & Banking Company bought, at different times, stock of the People's Bank & Trust Company to the amount of about 900 shares.

To meet the requirement of the bank examiner, Mr. Dinkins advised that the directors of the People's Bank & Trust Company, individually, borrow $30,000, and place it in some other bank to the credit of the People's Bank & Trust Company. Mr. Dinkins negotiated the loan with Mr. Walmsley, president of the Canal-Louisiana Bank & Trust Company, and told the directors of the People's Bank & Trust Company that, in his opinion, they would not run the risk of having to pay the $30,000 represented by the note, nor any part of it, because he was confident the bank would prosper, and he believed that its stockholders would so appreciate that the directors had saved the institution from failure that they would consent that the earnings should go to pay the note in preference to paying dividends to the stockholders. As evidence of his good faith, Mr. Dinkins offered to sign the note and become liable in solido with the directors of the People's Bank & Trust Company.

Accordingly, the demand note for $30,000 on which this suit is founded was signed in solido, on the 25th of April, 1910, by all who were present at the meeting of that date, including the present defendant and Messrs. Dibert and Dinkins. It was discounted at the Canal-Louisiana Bank & Trust Company, and the proceeds were left on deposit in that bank to the credit of the People's Bank & Trust Company.

There is a difference between the testimony of Mr. Dinkins and that of Mr. Walmsley as to their understanding regarding the depos-

it of the proceeds of this note.   Mr. Dinkins says that he told Mr. Walmsley that the People's Bank & Trust Company was not then in need of the cash, and would not draw against the fund unless it became necessary, and that he requested that payment should not be demanded of the makers of the note as long as the deposit remained to the credit of the People's Bank & Trust Company.   He says that Mr. Walmsley then suggested that he had no assurance that the People's Bank & Trust Company would not find it necessary to withdraw or check against the deposit, to which he, Mr. Dinkins, replied that, in that event, the Canal-Louisiana Bank & Trust Company could call on the makers of the note, who were good, for its immediate payment.   He says that Mr. Walmsley thereupon consented to discount the note and credit the proceeds to the account of the People's Bank & Trust Company.

Mr. Walmsley testified that his understanding with Mr. Dinkins was that the People's Bank & Trust Company would not check against the deposit until the note was paid, and that his bank would not have honored a check drawn on that fund as long as the note remained unpaid.   He admitted, however, that he understood that the agreement created only a moral obligation on the part of the officers and directors of the People's Bank & Trust Company, and that, if that bank had drawn a check for the amount of the deposit at any time, the Canal-Louisiana Bank & Trust Company would have been legally bound to pay it.   The gentlemen's agreement, testified to by Mr. Walmsley, is of no legal importance, especially as the proceeds of the discount were carried on the books of his bank as a deposit subject to check of the People's Bank & Trust Company, and the item was included in the total of deposits subject to check, in the statements of the condition of the Canal-Louisiana Bank & Trust Company rendered to the state bank examiner and published.

After the discounting of the note which is now sued on, the Bank examiner found that the capital stock of the People's Bank & Trust Company was yet impaired to an extent forbidden by the banking laws; and, in compliance with his demands, two other such notes, amounting to $68,000, were signed by the directors and discounted at another bank, and the proceeds were left on deposit to the credit of the People's Bank & Trust Company.

Thereafter the People's Bank & Trust Company continued in business; but the bank examiner demanded the charging off of other items deemed assets, and again found the stock impaired, until March, 1911, when the directors met and decided to sell all of the assets and the good will of the bank and liquidate its affairs.

Thereafter, at a meeting of the directors of the People's Bank & Trust Company, from which the members who were also directors of the Interstate Trust & Banking Company were excluded, on the 19th of March, 1911, a bid from the last-named bank, as well as a bid from at least one other bank, for the purchase of the assets of the People's Bank & Trust Company and the taking over of its business, were submitted and considered; and the bid of the Interstate Trust & Banking Company was accepted.   The price and terms agreed upon were that the purchaser should pay to the People's Bank & Trust Company, or its liquidating commissioners, $37,500, in addition to any surplus that might be realized from the assets transferred, in excess of the liabilities, the payment of which was to be assumed by the purchasing bank.   The other stipulations and conditions in the transfer are of no importance in the determination of the issues presented in this suit.   Among the items of assets transferred to the Interstate Trust & Banking Company

by the People's Bank & Trust Company appears the deposit in the Canal-Louisiana Bank, the proceeds of the discount of the note on which this suit is based.

Before the transfer of the assets of the People's Bank & Trust Company was consummated, one of its directors suggested that, as soon as the deposit of $30,000 in the Canal-Louisiana Bank would be transferred to the Interstate Trust & Banking Company, the Canal-Louisiana Bank & Trust Company might demand payment of the note, which would probably be very inconvenient to some of the directors who had signed it. Mr. Dinkins was asked what he could do about that, and he replied that he would have the note taken up and carried for a reasonable time by the Interstate Trust & Banking Company, if that bank's attorneys advised that there was no legal objection. The purpose was to postpone payment of the note until the directors could see all of the stockholders of the People's Bank & Trust Company and endeavor to get their consent that the liquidating commissioners pay the note with the funds that would otherwise be distributed among the stockholders. It was also contemplated that, if the stockholders of the People's Bank & Trust Company would not consent that the liquidators pay the notes which had been given by the directors to make good the impairment of the capital stock, the directors who had signed the notes would sue to compel the liquidators to apply the bank's funds to the payment of these notes.

The directors who had signed the note on which this suit is based, including the present defendant, signed and circulated among the other stockholders of the People's Bank & Trust Company, and requested them to sign, a document dated March ———, 1911, as follows, viz:

"Whereas, said directors of the People's Bank & Trust Company had, for the benefit of the said bank, signed four (4) certain promissory notes aggregating one hundred and twenty-six thousand ($126,000.00) dollars, and bearing interest, three (3) of which said notes have been negotiated with various banks and the proceeds thereof placed to the credit of the People's Bank & Trust Company, and one (1) of said notes, for the sum of twenty-eight thousand ($28,000.00) dollars, being placed in the said People's Bank & Trust Company at the request of the bank examiner to sustain the credit of the said bank; and, whereas, the said directors signing said notes should be protected so far as the assets of the bank left in the hands of the liquidators are concerned:

"Wherefore, we and each of us, as stockholders, do agree to waive in favor of said directors any dividends due us by the liquidating commissioners in order to secure to some extent the directors signing the said notes on their losses."

Seventy of the stockholders signed the foregoing document, but a majority refused to sign it. Consequently, the directors who had signed the notes to make good the impairment of the capital stock of the Peoples' Bank & Trust Company sued to compel the liquidating commissioners to apply the funds of the bank to the payment of the notes in preference to paying a distributive dividend to the stockholders. The present defendant, Leon Irwin, was one of the plaintiffs in that suit; but he withdrew his pleadings before the case came to trial, because of his intention to deny liability on the note. In the suit of the directors against the liquidators, the court held that the contribution made by the directors to make good the impairment of the capital stock of the bank was a donation to the bank, and therefore the demand of the directors to have the obligation put upon the bank or its stockholders was rejected. See Wright v. Gurley, 133 La. 746, 63 South. 310.

In the meantime, the attorneys of the Interstate Trust & Banking Company had advised that there was no legal objection to that bank's taking over the notes signed by the directors of the People's Bank & Trust Company; and, pursuant to a resolution of the board of directors authorizing the purchase of these notes, on the 12th of April, 1911, the assistant secretary of the Inter-

state Trust & Banking Company, with the cashier's check of that bank, called at the Canal-Louisiana Bank and took up the note on which this suit is based. He says that he told the bank official, to whom he was referred and with whom he dealt, that the Interstate Trust & Banking Company desired to take up the note and carry it, and told him that therefore the note should not be stamped "paid." The note was delivered uncanceled. Several officials of the Canal-Louisiana Bank & Trust Company testified in this case that, although they did not recall the details of the transaction, they did not understand that the bank had sold the note; and the entry made on the books of the Canal-Louisiana Bank & Trust Company showed merely that the amount of the note had been collected, indicating that the note was paid, not sold.

On the 12th of April, 1911, the day the note was taken up by the Interstate Trust & Banking Company, the People's Bank & Trust Company drew and gave to the Interstate Trust & Banking Company a check on the Canal-Louisiana Bank & Trust Company for the amount of the deposit there, and the fund was thus drawn out.

After the makers of the note had brought suit to compel the liquidators of the People's Bank & Trust Company to pay it, the Interstate Trust & Banking Company demanded payment of the makers of the note. Each paid his virile portion of the amount, except the present defendant and a Mr. Collins. The latter did not deny his liability on the note, but said that he was unable to pay.

Thereafter at a meeting of the board of directors of the Interstate Trust & Banking Company, on the 8th of August, 1912 (Capt. John Dibert having died, and Mr. Dinkins having withdrawn from the meeting of the board), the following resolution was adopted, viz.:

"Whereas, Lynn H. Dinkins, president, and John Dibert, vice president of this bank, together with certain other directors of the People's Bank & Trust Company, did sign three notes for the sum of $27,000.00, $30,000.00 and $41,000.00, respectively, and,

"Whereas, said notes were signed by the said Lynn H. Dinkins and John Dibert, solely in the interest of the Interstate Trust & Banking Company, and for its use and benefit, the said Lynn H. Dinkins and John Dibert having no personal interest or benefit in the transaction; therefore,

"Be it resolved, that any amounts which have been paid or may hereafter be paid by said Lynn H. Dinkins, or the heirs or executors of said John Dibert, who is now deceased, on said notes, or any of them, shall be refunded to said Lynn H. Dinkins or heirs or executors of said John Dibert."

On the facts recited above, the appellant urges the following defenses to this suit, viz.:

(1) That the note was executed as an accommodation to the People's Bank & Trust Company, and that there was no value received by the makers.

(2) That the Canal-Louisiana Bank & Trust Company was not a holder in due course, because it did not give any value for the note.

(3) That the Interstate Trust & Banking Company, through its officers, was informed of the infirmities of the note from the beginning, as the plaintiff confessed that the note was executed for its benefit by its president and vice president, although they signed the note as individuals.

(4) That the plaintiff must be charged with having had knowledge, before its pretended acquisition, that the note was accommodation paper; and that the note was not signed by James D. Lacey, although the president of the plaintiff bank had assured the other signers that Mr. Lacey would sign it before it would be used; and that the president of the plaintiff bank assured the defendant that he would incur no liability by signing the note.

(5) That the plaintiff did not purchase the note from the Canal-Louisiana Bank & Trust Company, but paid it and extinguished the debt.

(6) That, even if it be held that the plaintiff did purchase the note, nevertheless the

plaintiff did not acquire it in good faith, and is not a holder in due course.

(7) That the resolution adopted by the board of directors of the plaintiff bank, on the 8th of August, 1912, declaring that the note was signed by Messrs. Dinkins and Dibert in the interest and for the use and benefit of the plaintiff bank, and providing that Mr. Dinkins and the heirs of John Dibert should be reimbursed any amounts paid by Messrs. Dinkins and Dibert on the note, was an acknowledgment that the plaintiff bank was not a holder of the note in due course, and was a release of the co-obligors.

## Opinion.

[1] The act of the defendant and other directors, discounting their promissory note and placing the proceeds to the credit of the People's Bank & Trust Company, was a donation to the bank. It is one of the methods by which the directors are permitted to make good an impairment of the capital stock of a bank, under the provisions of section 17 of Act No. 179 of 1902. See Kennedy v. Young, State Bank Examiner, 136 La. 674, 67 South. 547, L. R. A. 1915D, 935. In such case, the contribution must be regarded as a gift by the individual directors to the bank, because, if the bank incurred an obligation to return the amount that was contributed to make good the impairment of its capital stock, there would be no improvement in the condition of the bank. See Wright et al. v. Gurley, 133 La. 746, 63 South. 310.

[2] The defendant and other directors of the People's Bank & Trust Company had a substantial interest in trying to save the bank from failure. This and their natural obligation to make good the impairment of its capital stock was deemed by them a sufficient consideration for signing and issuing the note. It has been decided, with regard to this note, in Wright et al. v. Gurley (cited above), that, although the natural obligation of the directors to make good the impairment of the capital stock of their bank could not have been enforced judicially, it was a sufficient consideration for the note they gave, and that a suit would not prevail to recover what was given in compliance with that natural obligation. R. C. C. 1759.

[3] The defendant relies upon the doctrine that, when a bank discounts a note and credits the maker with the proceeds, the bank is not a holder for value, unless the credit is absorbed by an antecedent debt, or until it is exhausted by withdrawal. This doctrine, however, can have no application where the proceeds of the discount are credited to some one else, at the request or with the consent of the maker of the note.

[4] Our conclusion is that the circumstances under which the plaintiff took up this note constituted a purchase of the note and not a payment or an extinguishment of the debt. When one who is not a maker of a note tenders to the holder the amount due on the note, expressing his intention and purpose to be to "take up the note and carry it," and requests that the note be therefore not stamped "paid," and the holder accepts the money and delivers the note uncanceled, the transaction is a sale of the note. The fact that the transferor did not understand that the legal definition and effect of the transaction was that of a sale is of no consequence, so long as he knew and understood all of the facts of the transaction.

Having concluded that this note was a valid obligation in favor of its original holder, and that it was sold to the plaintiff for a valuable consideration, it is perhaps unnecessary to consider further the question whether the plaintiff became a holder in due course of business. However, there is no merit in the defendant's contention that the plaintiff has disclaimed that it acquired the note in due course of business. The resolution adopted by the board of directors on the 8th of Au-

gust, 1912, did not remit the debt in favor of the two codebtors in solido, who were directors of the plaintiff bank. The preamble of the resolution merely declared that the obligation incurred by Messrs. Dinkins and Dibert was without any selfish motive or consideration on their part, but for the interest and benefit of the bank. The liability of the defendant as one of the makers of the note could not be affected by the bank's reimbursing Mr. Dinkins and the heirs of Capt. Dibert the amounts paid by them.

We fail to comprehend the theory on which it is contended that the debt represented by this note has been extinguished by confusion with the credit of the amount of the proceeds of the discount deposited in the Canal-Louisiana Bank. The plaintiff acquired the deposit of $30,000 in the Canal-Louisiana Bank, as one of the assets purchased from the People's Bank & Trust Company; but the plaintiff did not assume or become liable for the payment of the note held by the Canal-Louisiana Bank & Trust Company, because the note did not represent a liability of the People's Bank & Trust Company.

The evidence does not support the contention that Mr. Dinkins, either personally or on behalf of the bank of which he was president, guarantee that the makers of this note would not have to pay it. The expressions of his opinion that the People's Bank & Trust Company would prosper, that the stockholders would consent that the earnings of the bank should go to pay the note, and that the makers would therefore never be called upon to pay it could not reasonably have been construed as a guaranty that the makers of the note would never be held liable for its payment. Nor does the record bear out the contention that there was an agreement or understanding between Mr. Dinkins and the other signers of the note that it would not be discounted unless or until Mr. James D. Lacey would also sign it.

Having concluded that the defendant did not have a valid defense to this suit, we find it unnecessary to consider the effect of his admissions in his pleadings in the suit against the liquidators of the People's Bank & Trust Company, which were withdrawn. Our view, however, is that, although the withdrawal of the pleadings prevented their operating as an estoppel, the allegations serve as so much evidence of the present defendant's understanding of his obligation at the time he filed his petition in the other suit.

The judgment appealed from is affirmed, at the cost of the appellant.