(103 So. 520)

No. 26643.

ROBINSON et al. v. KULLMAN et al. (CONNER, Intervener).

(March 2, 1925. Rehearing Denied March 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Banks and banking ⬳65—Resolution of board of directors approving plan for reopening of bank held not ultra vires or illegal.**

Where bank was temporarily closed on account of shortage, due largely to defalcation of its cashier, and plan was proposed by state

bank examiner that shortage be raised by assessment of stockholders, who were to be reimbursed out of proceeds of cashier's property and net earnings of bank, *held* that a resolution by board of directors hypothecating funds to be received from sale of cashier's property and net earnings of bank to payment of assessment of stockholders was not ultra vires or illegal.

2. **Banks and banking ⬳65—Stockholders advancing sums to bank under plan by which reimbursement was to be made out of specified assets held entitled to payment out of such proceeds.**

Where bank was temporarily closed on account of shortage, due largely to defalcation of its cashier, and plan was proposed by state bank examiner that shortage be raised by assessment of stockholders as authorized by Act No. 300 of 1910, § 1, who were to be reimbursed out of proceeds of cashier's property and net earnings of bank, which plan was adopted by resolution of board of directors, and stockholders advanced sum, *held* that the bank thereby assumed express obligation to reimburse such stockholders out of designated assets, and stockholders are entitled to enforce legal right of action by demanding payment of the funds acquired from sale of cashier's property, and any funds which may be derived from sale of other property of cashier, in view of Civ. Code, arts. 1757, 1759.

Appeal from Tenth Judicial District Court, Parish of Tensas; N. M. Calhoun, Judge.

Action by Mrs. Helen B. Robinson and others against M. Kullman and others, in which E. B. Conner, special agent and liquidator of the Bank of Waterproof, intervened. From a judgment in favor of intervener, plaintiffs appeal. Reversed, demand of intervener rejected, and judgment ordered against defendants.

Ackland H. Jones, of Woodville, Miss., and Borah, Himel, Bloch & Borah, of New Orleans, for appellants.

Dale, Young & Dale, of St. Joseph, and Hugh Tullis, of Vidalia, for intervener appellee.

LAND, J. This is a contest between plaintiffs, stockholders of the Bank of Water-

proof, and the intervener, the special agent and liquidator of said bank, over a fund of $4,407.99. This fund has arisen from the sale by defendants of certain property placed in their hands, by the cashier of said bank, to be sold for the use and benefit of the bank, in settlement of his defalcation. Defendants are also stockholders of said bank, and occupy a fiduciary relation to the cashier in the nature of trustees, and, at the same time, they represent the bank as a stockholders' committee.

Defendants allege that they have no interest in this controversy, as they are mere stakeholders of the fund in dispute, and, averring their willingness to abide by the judgment of the court, pray that they be dismissed with costs. Plaintiffs allege that the fund in question is an asset of the bank, which has been turned over to them, and out of which they should be paid, by virtue of a certain resolution adopted by the board of directors of said bank; while the intervener attacks said resolution as illegal and ultra vires, alleges that plaintiffs, as stockholders, have no just or legal claim to said fund, and that the depositors and creditors of the bank should be paid out of the same, in preference to plaintiff stockholders.

1. The Bank of Waterproof is a state bank, with a capital stock of $25,000. On or about May 18, 1920, said bank was closed temporarily by the state bank examiner, on account of a shortage of $73,455.04, due largely to the defalcation of its cashier, and which depleted the capital stock and surplus. Instead of placing the affairs of the bank in liquidation, the state bank examiner submitted a statement showing the amount required to be made good in order to reinstate the capital stock. In the plan proposed was included a note of $25,000, to be discounted and liquidated out of the first funds realized out of the property of the cashier, assigned by him to defendants to be sold for the use and benefit of the bank. The plan included also as-

sessments on stock, to the amount of $28,-000, to be paid in cash by the directors and stockholders of the bank, and to be refunded out of the proceeds of the cashier's property, and, if said proceeds should be found insufficient, the balance was to be refunded out of the net earnings of the bank, until the claims of plaintiff stockholders should be settled in full. Some of the stockholders having failed to pay their assessments, the cash amounts arising from this source were reduced to $21,-900, but was supplemented later by cash paid by the defaulting cashier to the assistant state bank examiner in the sum of $5,859.40, and in other ways, thereby making the assets of the bank equal to its liabilities. Among these assets, however, was not included the property surrendered to the defendants by the cashier for the use and benefit of the bank, for the reason that said property, consisting of movables, immovables, notes, accounts, etc., was not available as cash at the time, for the purpose of reinstating the capital stock.

It was therefore proposed by the state bank examiner that the necessary amount of cash be raised by the note of $25,000, and by the assessment of the stockholders, who were to be reimbursed out of the proceeds of the property in the hands of defendants, and that these unavailable assets of the bank should be used for that purpose. This plan for the rehabilitation of the finances of the bank was accepted by the board of directors, and, on or about June 15, 1920, or about the time the bank was reorganized and reopened, a resolution was introduced and duly adopted by said board, hypothecating the funds to be received from the purchase price of the property in the hands of defendants, and from the yearly net earnings of the bank, after reserving the surplus required by law, to the payment, first, of the note of $25,000 and then to the payment of the amount of the assessments of the stockholders, out of the balance of the

property intrusted by the cashier to defendants, and out of the net earnings of the bank.

[1] It is true that the bank could not have succeeded in reorganizing and reopening for the transaction of its business, unless the state bank examiner was satisfied as to its financial condition. But, aside from any approval of the examiner as to the plan upon which the capital stock of the bank should be reinstated, the bank, through its board of directors, unquestionably, had the legal right to restore its financial integrity by the sale of the assets received from its cashier, if said sale had been feasible at the time. The arrangement made, therefore, with plaintiff stockholders by said bank amounts to nothing more than reducing its assets, unavailable at the time, to a cash basis. The bank took the stockholders' cash, and the stockholders took the unavailable assets of the bank. The resolution passed by the board of directors was, therefore, valid and binding, and not ultra vires or illegal, as contended by the interveners, either for lack of authority in said board, or because the affairs of said bank were in the hands of the state bank examiner. This resolution was passed to enable the bank to reopen upon a plan approved by the state bank examiner. At this time no liquidation of the affairs of the bank was in process, but only a temporary suspension of its business had been ordered by the state bank examiner.

The passage of this resolution before the reopening of the bank was necessary, for the plain reason that the purpose of the resolution was to carry into effect the proposed plan of the state bank examiner to reinstate the capital stock of the bank, a condition precedent to the further operation of the bank.

The fact that the Bank of Waterproof was finally closed by order of the state banking department and placed in actual liquidation on October 18, 1921, could not affect the obligation arising from the contract previously and legally made by the bank with plaintiff stockholders, nor deprive plaintiffs of the rights already vested in them under said contract.

[2] 2. Under this state of facts, it is clear that the assessments paid by plaintiff stockholders were not voluntary assessments, in the sense of donations or gifts to the bank for the benefit of the creditors. These assessments were not paid in compliance with any natural obligation upon the part of plaintiff stockholders to make good an impairment of the capital stock of the bank. The case of Interstate Trust & Banking Co. v. Irwin, 138 La. 325, 70 So. 313, relied upon by intervener, is not, therefore, applicable to the facts of the case before us. In the present case, the board of directors had entered into a contract with plaintiff stockholders to advance these sums on the assessment of their stock, and the bank had assumed, at the time, the express obligation to reimburse these stockholders out of certain designated assets.

The Bank of Waterproof is a state bank. Section 1 of Act 300 of 1910 does not authorize any compulsory assessment to be imposed upon the stockholders, but provides that the unsound and unsafe condition in which a state bank may find itself may be relieved by the stockholders "by voluntary assessment, or otherwise."

While no action arises in favor of the debtor who has complied with a natural obligation by payment, yet the obligation arising from a valid contract between the parties is a civil or perfect obligation conferring upon the obligee a legal right of action to enforce its performance. R. C. C. arts. 1759, 1757.

Plaintiff stockholders are, therefore, entitled to enforce their legal right of action in the present case, by demanding payment out of the fund in dispute, as well as out of future funds which may be derived from the sale of the property of the cashier in the hands of defendant. The note for $25,000, which was signed in solido by some of the stockholders of the bank, has been paid out

of the cashier's property, and is not questioned in this case; only the assessments paid on their stock by plaintiff stockholders being at issue.

The demands of plaintiffs were disallowed and rejected by the trial judge, and defendants were ordered to pay over to intervener, the special agent and liquidator of said bank, the fund in dispute, and such further proceeds derived from the future sales of the property surrendered by the cashier, for the benefit of the creditors and depositors of the bank. This judgment, in our opinion, is erroneous.

It is, therefore, ordered that the judgment appealed from be set aside and reversed. It is now ordered that the demands contained in the petition of intervention be rejected, and that there be judgment against defendants, M. Kullman, H. M. Marks, and R. N. Hunter, and in favor of the plaintiffs, Mrs. Helen B. Robinson, widow, Monroe Scharff, F. T. Hunter, A. B. Marks, Mrs. Gertie Marks Mount, authorized and assisted by her husband, Dr. Horace G. Mount, Mrs. M. Swartz, authorized and assisted by her husband, M. Swartz, Mrs. H. T. Newson, widow, W. D. A. Gorton, Kullman Bros., a commercial copartnership, composed of M. Kullman and F. Preis, Mrs. Mary Goldberg Kullman, authorized and assisted by her husband, Leon Kullman, Mrs. Eliza Hunter Lanius, authorized and assisted by her husband, W. T. Lanius, Mrs. Julia Hunter May, authorized and assisted by her husband, Henry W. May, Jr., Mrs. F. Goldberg, widow, Mrs. Eliza T. Hunter, authorized and assisted by her husband, N. B. Hunter, Mrs. L. B. Hunter, widow, F. O. Adams, Victor Massony, G. N. Hunter, R. N. Hunter, M. Kullman, N. B. Hunter, J. P. Scott, Earl T. Hunter, G. C. Goldman, A. J. Gibson, Louis T. Hunter, and D. J. Shelton, ordering the said M. Kullman, H. M. Marks and R. N. Hunter to make a distribution pro rata of the fund of $4,407.99 in controversy, proceeds of sale of property of C. D. Brigham, cashier, placed in their hands by the said Brigham for sale for the use and benefit of the Bank of Waterproof, and to make further distributions of said property, as converted into funds, between plaintiff stockholders. Defendants to pay all costs out of funds in their hands.